

**DISTRICT ATTORNEY'S OFFICE**
THREE SOUTH PENN SQUARE
PHILADELPHIA, PENNSYLVANIA 19107-3499
215-686-8000

LAWRENCE S. KRASNER
DISTRICT ATTORNEY

April 2, 2020

The Honorable Lynne A. Sitarski
United States Magistrate Judge
United States Courthouse, Room 3015
601 Market Street
Philadelphia, Pennsylvania 19106

      **RE:**   *Darrell Johnson v. Superintendent Lee Estock, et al.*
             **Civil Action No. 19-5093**

Dear Judge Sitarski,

      Enclosed please find a copy of the respondents' Response to Mr. Johnson's Petition for Writ of Habeas Corpus, which has been filed with the Clerk.

                              Respectfully submitted,

                              */s/ Kelly Wear*
                              Kelly Wear
                              Assistant District Attorney

cc:    Todd Henry, Esquire

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DARRELL JOHNSON,** | : | **CIVIL ACTION** |
| Petitioner, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SUPERINTENDENT LEE ESTOCK,** *et al.* | : | **NO. 19-5093** |
| Respondents. | | |

## RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS

A jury sitting in the Philadelphia Court of Common Pleas convicted petitioner of first-degree murder and three firearms offenses after he shot and killed a man over a dispute regarding a lost gun. Petitioner was sentenced to a mandatory term of life in prison for the murder. He now seeks federal habeas relief based on one claim that is both procedurally defaulted and meritless. No relief is due.

## FACTS AND PROCEDURAL HISTORY

In the early hours of December 24, 2007, petitioner shot and killed the victim, Tyrone "Tye" Coleman. A few days before the shooting, petitioner had asked the victim to hold onto a gun, which the victim lost soon after. He told petitioner that the police had been chasing him, so he threw the gun under a car. However, petitioner did not believe the victim's explanation. He accused the victim of selling the gun for profit, and argued with the victim about the gun all week (N.T. 3/8/10, 68; 3/10/10, 50, 147; 3/11/10, 97).

On December 23, 2007, petitioner and his cousin, Curtis Johnson[1], attended a party near the 5400 block of Delancey Street in Philadelphia. They went to the party with Curtis's ex-girlfriend, Helen Durham, and his longtime friend, Isaac Whitaker. At some point in the evening,

---

[1] Respondents will refer to Curtis Johnson by his first name to avoid confusion with petitioner.

Whitaker and Curtis left the party and drove to North Philadelphia with petitioner. On their way, petitioner accidentally fired his gun and broke the rear window of Whitaker's car. Whitaker ordered petitioner to get out of the car. Whitaker and Curtis then parked the car a few blocks away and began cleaning out the broken glass. The victim walked by and helped the pair clean out the glass. Later that night, Whitaker and Curtis went to Durham's house at 54th and Delancey Streets. Petitioner met up with them on the way, after the victim had left (N.T. 3/8/10, 34-47; 3/10/10, 131).

A few hours later, petitioner looked out the window of Durham's house and saw the victim walking. Petitioner left the house and started yelling at him about the missing gun. Curtis ran out after petitioner, knowing that "he was hot at Tye." He tried to calm petitioner, saying that they were "all family." The victim told petitioner that he would get him his money for the gun. Petitioner responded by pulling out a gun. The victim asked petitioner, "[W]hat are you going to do, shoot me?" Petitioner then shot the victim one time in the neck, killing him (N.T. 3/8/10, 32, 63; 3/10/10, 147–148, 206–216; 3/11/10, 97–98).

Curtis ran back to Durham's house. When petitioner returned, Curtis, in Whitaker's presence, confronted petitioner about the shooting, asking him, "Why the F did you shoot Tye?" Petitioner responded, "Fuck him. That nigger had my gun and I ain't letting no one get over on me." Petitioner said that he thought the victim was dead (N.T. 3/8/10, 64; 3/10/10, 149-150).

Tianna Thomas also witnessed the victim's murder. At approximately 3:00 a.m., she had been walking on Delancey Street with a friend when she saw petitioner, whom she used to date, talking to the victim. Thomas saw petitioner put one arm over the victim's shoulder, reach towards his waist with his free hand, and pull out a gun. She then saw the spark from the gun and heard the gunshot. The victim fell face-forward onto the ground. Thomas then saw petitioner, with a gun,

run up the street onto the 5400 block of Delancey Street. On January 5, 2008, Thomas gave a statement to police and identified petitioner as the shooter from a photo array (N.T. 3/10/10, 25–54, 176–190).

Petitioner was tried by a jury sitting before the Honorable Renee Cardwell Hughes of the Philadelphia Court of Common Pleas. On March 16, 2010, the jury found petitioner guilty of first-degree murder, carrying a firearm without a license, carrying a firearm in public in Philadelphia, and possessing an instrument of crime. On March 24, 2010, the trial court sentenced petitioner to a mandatory term of life in prison for the murder, with concurrent terms of imprisonment for the remaining offenses (Court of Common Pleas Docket No. CP-51-CR-0010412-2008).

Petitioner appealed, challenging the weight and sufficiency of the evidence, and the admission of Curtis's preliminary hearing testimony. On October 8, 2014, the Pennsylvania Superior Court affirmed the judgment of sentence. The Pennsylvania Supreme Court denied allowance of appeal on March 3, 2015.

On February 22, 2016, petitioner filed a timely petition under Pennsylvania's Post-Conviction Relief Act (PCRA) in the Philadelphia Court of Common Pleas. New counsel was appointed and filed amended petitions, challenging trial counsel's failure to present an eyewitness and the trial court's jury instruction on reasonable doubt. He also sought a new trial based on after-discovered evidence. On December 15, 2017, the PCRA court dismissed the PCRA petition as meritless. On March 25, 2019, the Superior Court affirmed the dismissal. The Pennsylvania Supreme Court denied allowance of appeal on October 22, 2019.

Petitioner then filed the instant habeas petition in federal court, which was docketed on October 30, 2019. His habeas petition raises a single claim: that trial counsel was ineffective for

failing to object to the jury instruction on reasonable doubt. This claim does not entitle petitioner to federal habeas relief because it is procedurally defaulted and meritless.

## APPLICABLE LEGAL STANDARDS

The petition in this case is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), effective on April 24, 1996. 28 U.S.C. § 2241 et seq. AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002); see also Johnson v. Carroll, 369 F.3d 253, 257 (3d Cir. 2004) (noting that "AEDPA severely circumscribes a federal habeas court's review of a state court decision").

### Exhaustion and Procedural Default

Before seeking a writ of habeas corpus, a petitioner must exhaust the remedies available in state court. Baldwin v. Reese, 541 U.S. 27, 29 (2004). This prerequisite ensures that the State has an opportunity to correct any purported violations of its prisoners' federal rights. Id. (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam)). The exhaustion requirement "is grounded in principles of comity and reflects a desire to protect the state courts' role in the enforcement of federal law." Castille v. Peoples, 489 U.S. 346, 349 (1989) (quoting Rose v. Lundy, 455 U.S. 509, 518 (1982)) (internal quotation marks omitted). It must be "strictly adhered to because it expresses respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)

Thus, claims presented on federal habeas review must have been properly presented to each level of the state courts in order to give each a fair opportunity to review the claim. See Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam). In Pennsylvania, prisoners typically may satisfy the

exhaustion requirement by fairly presenting their claims to the Court of Common Pleas and the Pennsylvania Superior Court. Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004). Fair presentation requires more than a "mere similarity" between the claim presented in state court and the claim raised in federal court. Duncan, 513 U.S. at 336. A petitioner must demonstrate that the claim he is pursuing in federal court is "the substantial equivalent" of the claim presented in state court. Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). In other words, both the "legal theory" and the "facts underpinning" the claims raised in federal court "must have been presented to the state courts." Evans v. Court of Common Pleas, Delaware County, 959 F.2d 1227, 1231 (3d Cir. 1992). It is the petitioner's burden to prove that he has exhausted all available state court remedies before seeking federal review. Lambert, 134 F.3d at 513.

If a petitioner has not fairly presented his claims to the state courts, and no state remedy remains available, the unexhausted claims may be deemed technically "exhausted," even if the state courts have not had the opportunity to pass upon their merits. Grey v. Netherland, 518 U.S. 152, 161 (1996). In that event, however, federal review of those claims is still precluded if the petitioner has "defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule." Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also O'Sullivan, 526 U.S. at 847-849 (finding claims not presented in petition for discretionary review in state court to be defaulted where time for filing petition in state supreme court had expired, making claims unreviewable). If a claim has been procedurally defaulted under state law, federal habeas review is barred unless the petitioner can: (1) "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law"; or (2) "demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

***Cause and Prejudice***

Cause exists if the petitioner "can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). Generally, "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error'." Coleman, 501 U.S. at 753 (citation omitted). There is, however, a "narrow exception" to the general rule of Coleman: "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Martinez v. Ryan, 566 U.S. 1, 9 (2012).

To satisfy this "narrow exception," the petitioner must prove that: (1) the underlying claim of ineffective assistance of trial counsel is a "substantial one," meaning that the underlying claim "has some merit"; and (2) PCRA counsel was ineffective, under the Strickland standard, for failing to accuse trial counsel of being ineffective. Id. at 9, 14. The petitioner must also show that state law requires waiting until post-conviction review to raise an ineffective assistance claim, or "makes it virtually impossible for appellate counsel to adequately present" such a claim on direct review. Trevino v. Thaler, 569 U.S. 413, 422-23 (2013) (internal quotation marks and citation omitted). "[T]he exhaustion doctrine . . . requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." Murray v. Carrier, 477 U.S. 478, 489 (1986).

***Miscarriage of Justice***

To establish a "miscarriage of justice," a petitioner must present new and reliable evidence of his actual innocence. Schlup v. Delo, 513 U.S. 298, 324 (1995); see also Id. (listing "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" as examples of

"reliable evidence"). In this context, "'actual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998). Thus, to prove "actual innocence," a petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (citation omitted).

### *Deferential Standard of Review*

When a federal claim has been adjudicated on the merits in state court, the state court adjudication must be deferred to unless that decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law," as set out by the United States Supreme Court; or (2) "based on an unreasonable determination of the facts in light of the evidence" before the state court. 28 U.S.C. § 2254(d); accord Harrington v. Richter, 562 U.S. 86, 100 (2011).

This standard is "difficult to meet . . . because it was meant to be." Harrington, 562 U.S. at 102. The deferential AEDPA standard of review "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. at 102-103 (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)); see also Price v. Vincent, 538 U.S. 634, 639 (2003) (reversing a Sixth Circuit decision that evaluated a habeas claim without reference to the deferential standard of review required by AEDPA); Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam) (AEDPA "demands that state-court decisions be given the benefit of the doubt" and that federal courts presume "state courts know and follow the law"). Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington, 562 U.S. at 102.

Under this deferential standard, a court must "first decide what constitutes 'clearly established Federal law'." Lockyer v. Andrade, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)); see also Williams v. Taylor, 529 U.S. 362, 412 (2000) (specifying that the phrase "'clearly established Federal law' . . . refers to the holdings, as opposed to the dicta, of th[e] [Supreme Court]'s decisions"). When the Supreme Court's cases "give no clear answer" to that question, "it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (per curiam) (quoting Carey v. Musladin, 549 U.S. 70, 76 (2006)).

Once the applicable "clearly established federal law" is determined, petitioner must prove that the state court decision is either contrary to, or an unreasonable application of, that clearly established precedent. A decision is "contrary to" federal law if the state court: (1) applies a rule different from the one set forth by the United States Supreme Court (for example, wholly failing to apply Strickland v. Washington, 466 U.S. 668 (1984), or its equivalent, to an ineffectiveness claim); or (2) "decides a case differently than [the Supreme Court] ha[s] done on a set of materially indistinguishable facts." Bell v. Cone, 535 U.S. 685, 694 (2002).

By contrast, a decision is an "unreasonable application" of federal law "if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of the particular case." Id. Relief is not available merely because a habeas court concludes that the state court "applied clearly established federal law erroneously or incorrectly." Williams, 529 U.S. at 411. Instead, it is petitioner's burden to show that it was "beyond the realm of possibility that a fairminded jurist could" agree with the state court's determination. Woods v. Etherton, 136 S.Ct. 1149, 1152 (2016) (per curiam). This reasonableness

analysis applies even when the state court failed to cite, or show any awareness of, the relevant Supreme Court cases. Early v. Packer, 537 U.S. 3, 11 (2002) (per curiam).

In arguing that the state court's decision was unreasonable, a petitioner is limited to the "record that was before the state court." Cullen v. Pinholster, 563 U.S. 170, 180 (2011). The highly deferential AEDPA standard requires federal courts to "focu[s] on what a state court knew and did, and to measure state-court decisions against [the Supreme Court]'s precedents as of the time the state court renders its decision." Greene v. Fisher, 565 U.S. 34, 38 (2011) (quoting Cullen, 563 U.S. at 182) (internal quotation marks and emphasis omitted).

### Deference to State Court Fact-Finding

A state court's factual determinations "shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "This presumption of correctness applies to factual determinations of both state trial and appellate courts." Lewis v. Horn, 581 F.3d 92, 111 (3d Cir. 2009). "Implicit factual findings are entitled to § 2254(e)(1)'s presumption of correctness as well," and the habeas statute "does not condition deference . . . on whether the state court held a hearing." Id.

### Ineffective Assistance of Counsel

The clearly established federal law regarding ineffective assistance of counsel claims is found in Strickland v. Washington, 466 U.S. 668 (1984). This same standard, albeit separated into three prongs rather than two, is used by Pennsylvania courts in assessing ineffective assistance of counsel under the Pennsylvania Constitution. Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000); accord Commonwealth v. Pierce, 527 A.2d 973, 976 (Pa. 1987) (recognizing that Strickland and the ineffectiveness standard applied in Pennsylvania "constitute the same rule").

Under Strickland, counsel is presumed effective and the petitioner bears the burden of proving otherwise. Burt v. Titlow, 571 U.S. 12, 17 (2013) (quoting Strickland, 466 U.S. at 687, 690). To overcome that presumption, a petitioner must demonstrate that: (1) counsel's performance was deficient; and (2) the petitioner suffered prejudice as a result. Strickland, 466 U.S. at 687.

"Strickland's first prong sets a high bar[,]" Buck v. Davis, 137 S.Ct. 759, 776 (2017), requiring the petitioner to prove that his attorney "made errors so serious" that he "was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687; see also Harrington v. Richter, 562 U.S. 86, 105 (2011) ("The question is whether an attorney's representation amounted to *incompetence* under prevailing professional norms, not whether it deviated from best practices or most common custom.") (internal quotation marks and citation omitted). "It is all too tempting for a defendant to second-guess" counsel merely because counsel's strategy ultimately did not achieve the result his client desired. Strickland, 466 U.S. at 689. Therefore, every effort must be made "to eliminate the distorting effects of hindsight" and evaluate the challenged conduct "from counsel's perspective at the time." Id. "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Knowles v. Mirzayance, 556 U.S. 111, 124 (2009) (quoting Strickland, 466 U.S. at 690) (brackets omitted).

To prove prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 127. "That requires a substantial, not just conceivable, likelihood of a different result." Cullen v. Pinholster, 563 U.S. 170, 189 (2011) (internal quotation marks and citation omitted).

Where a claim of ineffective assistance of counsel is reviewed under AEDPA, a federal court's consideration of the claim is "doubly deferential" because counsel and the state court must each be given "the benefit of the doubt" before relief can be granted. Woods v. Etherton, 136 S.Ct. 1149, 1151 (2016) (per curiam) (citations omitted). Stated another way, a petitioner must prove both that his counsel was grossly incompetent, Kimmelman v. Morrison, 477 U.S. 365, 382 (1986), and that the state court's adjudication of the claim was clearly unreasonable given the state of the law at that time. Woods, 136 S.Ct. at 1151.

"Because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles, 556 U.S. at 123 (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations")); see also Burt, 571 U.S. at 15 (encouraging deference to state court decisions "where a case involves such a common claim as ineffective assistance of counsel under Strickland – a claim state courts have now adjudicated in countless criminal cases for nearly 30 years").

## DISCUSSION

**PETITIONER'S CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE JURY INSTRUCTION ON REASONABLE DOUBT IS PROCEDURALLY DEFAULTED AND DOES NOT PROVIDE A BASIS FOR FEDERAL HABEAS RELIEF IN ANY EVENT.**

At trial, after giving the jury the standard instruction on reasonable doubt, see Pennsylvania Suggested Standard Jury Instructions § 7.01, Judge Hughes used a hypothetical concerning a loved one in need of surgery to explain the concept of reasonable doubt (N.T. 3/15/10, 51-54). Petitioner now argues that his trial counsel was ineffective for failing to object to this jury instruction (Habeas Petition, 8). This claim is procedurally defaulted because petitioner failed to fairly present it to the

11

state courts, and he would be barred from doing so now. PCRA counsel's alleged ineffectiveness in failing to raise this claim does not excuse the default. The underlying claim of trial counsel's ineffectiveness is not substantial. It was objectively reasonable for trial counsel not to object to the jury instruction as similar instructions have been repeatedly upheld by both state and federal courts. Moreover, petitioner was not prejudiced by the instruction as the Commonwealth presented ample evidence of his guilt.

As petitioner acknowledges, he did not raise his instant claim of ineffective assistance of trial counsel in state court (Habeas Petition, 10). Instead, he argued in his PCRA petition and on appeal from the denial of his petition that the trial court erred in instructing the jury on reasonable doubt (Superior Court Opinion, 5). The Superior Court found that this distinct claim of trial court error was waived under well-settled state law (id. at 6-7). Thus, petitioner failed to fairly present his ineffective assistance claim in state court, as required for exhaustion purposes. See Evans v. Court of Common Pleas, Delaware Cnty., 959 F.2d 1227, 1231 (3d Cir. 1992) (to satisfy the exhaustion requirement, "*[b]oth the legal theory* and the facts underpinning the federal claim must have been presented to the state courts) (emphasis added); see also Duncan v. Henry, 513 U.S. 364, 366 (1995) (per curiam) ("mere similarity of claims is insufficient to exhaust").

Moreover, he would be precluded from raising the ineffective assistance claim in state court at this juncture, due to the waiver and time bar provisions of the PCRA. See 42 Pa.C.S. § 9544(b) (deeming an issue "waived" if "the petitioner could have raised it but failed to do so . . . in a prior state post-conviction proceeding"); 42 Pa.C.S. § 9545(b)(1) (requiring all petitions for post-conviction relief, including second or subsequent petitions, to be filed within one year of the date the defendant's judgment of sentence became final). Therefore, the claim is procedurally defaulted for federal habeas purposes. To obtain federal habeas review, petitioner must show good

cause and prejudice for the default, or demonstrate that the failure to consider the claim will result in a miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991).

PCRA counsel's alleged ineffectiveness in failing to raise the claim of trial counsel ineffectiveness does not excuse the default. As explained below, petitioner's underlying claim is not "substantial," as required by Martinez v. Ryan, 566 U.S. 1 (2012).

Before the jury deliberated, the trial court gave the jury the following instruction on reasonable doubt:

> Now, ladies and gentlemen, the standard that the Commonwealth is held to is proof beyond a reasonable doubt. It is the highest standard in the law. There is nothing greater. The Commonwealth bears the burden of proving that Darrell Johnson is guilty beyond a reasonable doubt. But this does not mean that the Commonwealth must prove its case beyond all doubt. The Commonwealth is not required to meet some mathematical certainty. The Commonwealth is not required to demonstrate the complete impossibility of innocence.

> A reasonable doubt is a doubt that would cause a reasonably careful and sensible person to pause, to hesitate, to refrain from acting upon a matter of the highest importance to their own affairs, their own interests. Ladies and gentleman, a reasonable doubt must be a real doubt. It must be a doubt that arises out of the evidence or out of the lack of evidence presented. It may not be a doubt that is imagined. It may not be a doubt that is manufactured to avoid carrying out an unpleasant responsibility. I think about reasonable doubt this way:

> Each one of you has someone in your life that you love. Each one of you has a precious one; a spouse, a significant other, a sibling, a child, a grandchild. There's someone in your life who is absolutely precious to you. If you were told that your precious one had a life-threatening condition and that the only appropriate protocol for that condition was surgery, now, ladies and gentleman, most likely you're going to ask for a second opinion. You might even ask for a third opinion. If you're like me, you're going to do all the research you can find. You're going to want to know what is this condition. How is it treated. What is the likelihood of success. You're probably going to call everybody you know who has anything to do with medicine. Tell me. Tell me what you know about this condition. Tell me about the surgery. Tell me about this doctor who is doing the surgery.

> Ladies and gentleman, at some point, however, the question will be called, do you go forward with the surgery or not. If you go forward with the surgery, it's not because you have moved beyond all doubt. There are no guarantees. A reasonable doubt is a doubt that arises out of the evidence presented or out of the lack of the evidence presented with some respect to some element of each of the crimes charged. Ladies and

gentleman, if you go forward, it is because you have moved beyond all reasonable doubt. I remind you again that it must be a real doubt. It may not be manufactured. It may not be a doubt that is created to avoid carrying out an unpleasant or serious responsibility.

You may not find Darrell Johnson guilty based upon a mere suspicion of guilt. The Commonwealth's burden is to prove beyond a reasonable doubt each and every element of the crimes charged and that Darrell Johnson is guilty of those crimes. If the Commonwealth has met that burden, then Darrell Johnson is not (sic) longer presumed to be innocent and you must find him guilty. On the other hand, if the Commonwealth has not met its burden, then you must find him not guilty.

(N.T. 3/15/10, 51-54). Petitioner now argues that his trial counsel was ineffective for failing to object to this instruction (Habeas Petition, 8).

But Pennsylvania courts, reviewing materially identical instructions by the same trial judge, have consistently held that the instruction is *not* erroneous. See Commonwealth v. Gant, No. 1612 EDA 2007, at 7-9 (Pa. Super. 2009) (non-precedential) (rejecting challenge to same hypothetical on reasonable doubt); Commonwealth v. Johnson, No. 1639 EDA 1999, at 2-3 (Pa. Super. 2000) (non-precedential) (same); Commonwealth v. Corbin, 2016 WL 1603471, at *6, *17 (Pa. Super. 2016) (non-precedential) (finding claim that trial counsel was ineffective for failing to object to reasonable doubt instruction to be meritless); Commonwealth v. Moore, 2019 WL 6825166, at *5-6 (Pa. Super. 2019) (non-precedential) (same); Commonwealth v. Green, 2018 WL 4102963, at 6-10 (Pa. Super. 2018) (non-precedential) (same); see also Commonwealth v. Schultz, No. 1373 EDA 2006, at 6-7 (Pa. Super. 2007) (non-precedential) (concluding that instruction defining reasonable doubt as "a doubt that would cause a reasonably careful and sensible person to pause, hesitate, or refrain from acting upon a matter of importance in his or her own affairs or to his or her own interest, such as making the decision . . . to undergo serious medical treatment . . . correctly communicated . . . the nature of reasonable doubt") (emphasis omitted); Commonwealth v. Clarkson, No. 2859 EDA 2003, 6-12 (Pa. Super. 2004) (non-precedential)

14

(holding that reasonable doubt instruction providing that "an example would be a decision to have risky surgery . . . clearly and accurately state[d] the law").

Federal judges in this district have also repeatedly declined to find error in such cases. See Baxter v. McGinley, 2020 WL 299517 (E.D. Pa. 2020) (order of Joyner, J.) (appeal pending at No. 20-1259); Baxter v. McGinley, 2019 WL 7606222, at *6 (E.D. Pa. 2019) (report and recommendation of Rice, M.J.); Corbin v. Tice, No. 16-CV-4527 (E.D. Pa. 2018 & 2019) (report and recommendation and supplemental report and recommendation of Reuter, M.J.); Gant v. Giroux, 2017 WL 2797911 (E.D. Pa. 2017) (order of Savage, J.) (relief subsequently granted following concession by Commonwealth in Third Circuit); Gant v. Giroux, 2017 WL 2825927, at *14-15 (E.D. Pa. 2017) (report and recommendation of Lloret, M.J.); Johnson v. Varner, No. 01-2409, at 8 (E.D. Pa. 2003) (memorandum and order of Kauffman, J.); Johnson v. Varner, No. 01-CV-2409, at 11 (E.D. Pa. 2003) (report and recommendation of Caracappa, M.J.).[2]

The jurists in these cases had "significantly more time – and presumably more expertise – to bring to bear in evaluating the instruction's constitutionality" than trial counsel, Brown v. Folino, 179 F. App'x 845, 850 (3d Cir. 2006) (non-precedential), and yet, not one of them discerned any constitutional error. Under these circumstances, it certainly "fell within the wide range of reasonable professional assistance" for counsel, in the heat of the moment at trial, not to object to the instruction. Id.

---

[2] Respondents acknowledge that this Court recommended relief in Brown v. Kauffman, 2019 WL 6615187 (E.D. Pa. 2019) (report and recommendation of Sitarski, M.J.), on a similar claim, and that this recommendation was subsequently approved, Id. (order of Slomsky, J.). However, that report and recommendation is not binding, Mullin v. Balicki, 875 F.3d 140, 153 (3d Cir. 2017) (decision of a magistrate judge is not binding precedent), and respondents respectfully submit that counsel here was not ineffective for the reasons outlined below.

Given the strength of the evidence against him, petitioner also cannot show that he was prejudiced by trial counsel's failure to object to the jury instruction. Petitioner was implicated in the shooting by three separate witnesses. His cousin, Curtis Johnson, and ex-girlfriend, Tianna Thomas, each observed petitioner shoot the victim in the neck, killing him. They each told the police that petitioner had an ongoing dispute with the victim regarding a gun. Petitioner's longtime friend, Isaac Whitaker, was present when Curtis confronted petitioner about the shooting. Petitioner admitted to Curtis that he shot the victim, and he said that he thought the victim was dead  (N.T. 3/8/10, 64, 71–76; 3/10/10, 47–52, 147-148). Based on this record, it is not reasonably likely that the jury would have acquitted petitioner but for the trial court's use of a hypothetical within a jury instruction that was otherwise correct.

In Brooks v. Gilmore, 2017 WL 3475475, at *7 (E.D. Pa. 2017) (McHugh, J.), a federal district court judge ruled that a claim that trial counsel was ineffective for not objecting to a similar "surgery" hypothetical was not subject to a prejudice analysis under Strickland.[3] But a decision of a federal district court judge is not binding *anywhere*, even in the same federal district. Camreta v. Greene, 563 U.S. 692, 709 n.7 (2011). Indeed, since Brooks was issued, the Honorable Timothy R. Rice and the Honorable Thomas J. Rueter have each expressly disagreed with that decision, and upheld materially identical reasonable doubt instructions by the same trial judge. Baxter, 2019 WL 7606222, at *6; Corbin, No. 16-CV-4527.[4]

---

[3]  In Brown, this Court "agree[d] with Brooks that prejudice is presumed." 2019 WL 6615187, at *12. Respondents respectfully request that this Court revisit its position in light of the discussion below.

[4]  The District Court placed the habeas proceedings in Corbin in civil suspense pending the resolution of the Third Circuit appeal in Gant v. Superintendent SCI Albion, No. 17-2559. On October 11, 2018, the Third Circuit conditionally granted a writ of habeas corpus in Gant, after the Commonwealth conceded relief. On January 15, 2019, Judge Rueter issued a supplemental report and recommendation in Corbin, again upholding the reasonable doubt instruction. Corbin,

Nor is Brooks remotely persuasive on this point. On direct review of a preserved claim of trial court error, a jury instruction that misdefines reasonable doubt is considered a "structural" error, and therefore is not subject to harmless-error review. Sullivan v. Louisiana, 508 U.S. 275, 281-82 (1993). But Strickland, which governs ineffectiveness claims, "bears its own distinct substantive standard for a constitutional violation; it does not merely borrow or incorporate other tests for constitutional error and prejudice." Walker v. Martel, 709 F.3d 925, 940 (9th Cir. 2013) (citing Premo v. Moore, 562 U.S. 115 (2011)). Thus, "[i]t is one thing to recognize that structural errors and defects obviate any requirement that prejudice be shown on direct appeal and rule out an application of the harmless error rule in that context. It is another matter entirely to say that they vitiate the prejudice requirement for an ineffective assistance claim." Purvis v. Crosby, 451 F.3d 734, 740 (11th Cir. 2006).

In Brooks, the district court judge argued that Weaver v. Massachusetts, 137 S.Ct. 1899 (2017), can be "read" to support applying the "structural error" rule to a claim of ineffectiveness for failing to object to a defective jury instruction on reasonable doubt. Brooks, 2017 WL 3475475, at *7. In fact, the Supreme Court in Weaver expressly declined to address whether prejudice should be presumed with respect to a claim that trial counsel was ineffective for not objecting to the absence of a reasonable doubt instruction:

> Neither the reasoning nor the holding here calls into question the Court's precedents determining that certain errors are deemed structural and require reversal because they cause fundamental unfairness, either to the defendant in the specific case or by pervasive undermining of the systemic requirements of a fair and open judicial process. . . . Those precedents include Sullivan v. Louisiana, 508 U.S., at 278–279, 113 S.Ct. 2078 (failure to give a reasonable-doubt instruction) . . . The errors in those cases necessitated automatic reversal after they were preserved and then raised on direct appeal. *And this opinion does not address whether the result should*

No. 16-CV-4527, at 13 n.6, 14 ("This court respectfully disagrees with the Brooks analysis. . . . Judge Hughes' illustration of reasonable doubt does not violate due process of law.").

> *be any different if the errors were raised instead in an ineffective-assistance claim*
> *on collateral review.*

<u>Weaver</u>, 137 S.Ct. at 1911-1912 (emphasis added).[5]

Indeed, if anything, <u>Weaver</u> strongly indicates that prejudice should not be presumed here. The Supreme Court in Weaver addressed "whether a defendant must demonstrate prejudice . . . in the context of trial counsel's failure to object to the closure of the courtroom during jury selection." 137 S.Ct. at 1907. The High Court held that "a violation of the right to a public trial is a structural error." <u>Id.</u> at 1908. Nonetheless, the Supreme Court went on to hold that "when a defendant raises a public-trial violation via an ineffective-assistance-of-counsel claim, Strickland prejudice is not shown automatically. Instead, the burden is on the defendant to show either a reasonable probability of a different outcome in his or her case or, as the Court has assumed for these purposes, . . . to show that the particular public-trial violation was so serious as to render his or her trial fundamentally unfair." <u>Id.</u> at 1911. Thus, Weaver squarely held that even a structural error may require a showing of prejudice in order to warrant relief when raised under the guise of ineffectiveness.

Moreover, in so holding, the Supreme Court emphasized that "[t]he prejudice showing is in most cases a necessary part of a <u>Strickland</u> claim[,]" and that "[a]s a rule, . . . a violation of the Sixth Amendment right to effective representation is not complete until the defendant is

---

[5] It is true, as <u>Brooks</u> noted, that there is language earlier in the <u>Weaver</u> opinion providing that "an error has been deemed structural if the error always results in fundamental unfairness. For example, if an indigent defendant is denied an attorney or if the judge fails to give a reasonable-doubt instruction, the resulting trial is always a fundamentally unfair one. It therefore would be futile for the government to try to show harmlessness." <u>Brooks,</u> 2017 WL 3475475, at *7 n.8 (quoting <u>Weaver</u>, 137 S.Ct. at 1908). However, this language merely recognized that a preserved claim of error regarding the absence of a reasonable doubt instruction is structural in nature and not amenable to harmless error review. This language did not indicate that a claim of ineffective assistance of counsel for declining to object to a defective reasonable doubt instruction is not subject to <u>Strickland</u> prejudice.

prejudiced." Weaver, 137 S.Ct. at 1910 (emphasis added). The Weaver Court also emphasized that:

> when state or federal courts adjudicate errors objected to during trial and then raised on direct review, the systemic costs of remedying the error are diminished to some extent. That is because, if a new trial is ordered on direct review, there may be a reasonable chance that not too much time will have elapsed for witness memories still to be accurate and physical evidence not to be lost. There are also advantages of direct judicial supervision. Reviewing courts, in the regular course of the appellate process, can give instruction to the trial courts in a familiar context that allows for elaboration of the relevant principles based on review of an adequate record. For instance, in this case, the factors and circumstances that might justify a temporary closure are best considered in the regular appellate process and not in the context of a later proceeding, with its added time delays.
>
> When an ineffective-assistance-of-counsel claim is raised in postconviction proceedings, the costs and uncertainties of a new trial are greater because more time will have elapsed in most cases. The finality interest is more at risk, see Strickland, 466 U.S., at 693–694, 104 S.Ct. 2052 (noting the "profound importance of finality in criminal proceedings"), and direct review often has given at least one opportunity for an appellate review of trial proceedings. These differences justify a different standard for evaluating a structural error depending on whether it is raised on direct review or raised instead in a claim alleging ineffective assistance of counsel.
>
> In sum, "[a]n ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial," thus undermining the finality of jury verdicts. Harrington v. Richter, 562 U.S. 86, 105, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). For this reason, the rules governing ineffective-assistance claims "must be applied with scrupulous care." Premo, 562 U.S., at 122, 131 S.Ct. 733.

Id. These concerns apply with equal force in this case.

Thus, petitioner's attempt to show "cause" for the default fails for the same reason as his underlying claim: because his claim of trial counsel's ineffectiveness is meritless. Trial counsel could reasonably decline to raise an objection to a jury instruction that had repeatedly been upheld by both state and federal courts, and which would not have created a reasonable probability of a different outcome at trial in any event.

## CONCLUSION

Therefore, respondents respectfully request that the Petition for Writ of Habeas Corpus be dismissed with prejudice, and without a hearing.

Respectfully submitted,

*/s/ Kelly Wear*

KELLY WEAR
Assistant District Attorney

MAX C. KAUFMAN
Supervisor, Federal Litigation

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DARRELL JOHNSON,** | : | **CIVIL ACTION** |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SUPERINTENDENT LEE ESTOCK,** *et al.* | : | **NO. 19-5093** |
| **Respondents.** | | |

## CERTIFICATE OF SERVICE

I, KELLY WEAR, counsel for respondents, hereby certify that on April 2, 2020, a copy of the foregoing was served via this Court's electronic filing system on petitioner's counsel, Todd Henry, Esquire.


*/s/ Kelly Wear*
Kelly Wear
Assistant District Attorney