# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARRELL JOHNSON,** | : | |
| *Petitioner* | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **SUPERINTENDENT LEE ESTOCK** *et al.,* | : | **No. 19-5093** |
| *Respondents* | : | |

## MEMORANDUM

PRATTER, J.                                                    APRIL __14__, 2023

Darrell Johnson petitions this Court for a writ of habeas corpus, asserting that his trial counsel was ineffective because they did not object to the trial court's unconstitutional reasonable doubt jury instruction. Upon careful review of this case and of the magistrate judge's Report and Recommendation, this Court finds that, although the trial court's instruction was indeed unconstitutional, Mr. Johnson has not established, as he must, that he suffered actual prejudice as a result. Therefore, the Court denies Mr. Johnson's habeas petition.

## BACKGROUND

In the early morning of December 24, 2007, Mr. Johnson confronted his cousin, Tyrone Coleman, on a street corner in Philadelphia about money he was owed. *Commonwealth v. Johnson*, No. CP-51-CR-001041222008, 2010 WL 10879457, at *1 (Pa. Com. Pl. Nov. 10, 2010). In the course of this argument, Mr. Johnson pulled out a firearm and shot Mr. Coleman in the neck, killing him. *Id.* Present at the time were Curtis Johnson, another of Mr. Johnson's cousins, and Tianna Thomas, Mr. Johnson's ex-girlfriend who was walking nearby with two friends when the shooting occurred. *Id.* Mr. Johnson and his cousin Curtis Johnson left Mr. Coleman in the street and went to the home of Helen Durham, where they discussed the shooting in the presence of Isaac

Whitaker. *Id.* Ms. Thomas, Mr. Whitaker, and Curtis Johnson all gave statements to law enforcement that identified Mr. Johnson as the shooter. *Id.*

At the conclusion of Mr. Johnson's trial, the trial court charged the jury with assessing Mr. Johnson's guilt. It began by following, more or less, the Pennsylvania Standard Jury Instruction on reasonable doubt:

> Now, ladies and gentlemen, the standard that the Commonwealth is held to is proof beyond a reasonable doubt. It is the highest standard in the law. There is nothing greater. The Commonwealth bears the burden of proving that Darrell Johnson is guilty beyond a reasonable doubt. But this does not mean that the Commonwealth must prove its case beyond all doubt. The Commonwealth is not required to meet some mathematical certainty. The Commonwealth is not required to demonstrate the complete impossibility of innocence.
>
> A reasonable doubt is a doubt that would cause a reasonably careful and sensible person to pause, to hesitate, to refrain from acting upon a matter of the highest importance to their own affairs, their own interests. Ladies and gentlemen, a reasonable doubt must be a real doubt. It must be a doubt that arises out of the evidence or out of the lack of evidence presented. It may not be a doubt that is imagined. It may not be a doubt that is manufactured to avoid carrying out an unpleasant responsibility.

R. & R., at 2–3 (quoting N.T. 3/15/2010 at 51–54). *See* Pa. Suggested Standard Jury Instructions (Crim.) § 7.01 (2016). The trial court then proceeded to offer an illustration of reasonable doubt not present in the standard jury instructions:

> I think about reasonable doubt this way:
>
> Each one of you has someone in your life that you love. Each one of you has a precious one; a spouse, a significant other, a sibling, a child, a grandchild. There's someone in your life who is absolutely precious to you. If you were told that your precious one had a life-threatening condition and that the only appropriate protocol for that condition was surgery, now, ladies and gentlemen, most likely you're going to ask for a second opinion. You might even ask for a third opinion. If you're like me, you're going to do all the research you can find. You're going to want to know what is this condition. How is it treated. What is the likelihood of success. You're probably going to call everybody you know who has anything to do with medicine. Tell me. Tell me what you know about this condition. Tell me about the surgery. Tell me about this doctor who is doing the surgery.
>
> Ladies and gentlemen, at some point, however, the question will be called, do you go forward with the surgery or not. If you go forward with the surgery, it's not because you have moved beyond all doubt. There are no guarantees. A reasonable doubt is a doubt that arises out of the evidence presented or out of the

> lack of the evidence presented with some respect to some element of each of the crimes charged. Ladies and gentlemen, if you go forward, it is because you have moved beyond all reasonable doubt.

R. & R., at 3 (quoting N.T. 3/15/2010 at 51–54).

The jury found Mr. Johnson guilty of murder in the first degree, firearms not to be carried without a license, carrying a firearm in public in Philadelphia, and possession of an instrument of crime. Dkt. No. CP-51-CR-0010412-2008, at 4–5. The trial court sentenced Mr. Johnson to life imprisonment without the possibility of parole on the charge of murder in the first degree, with concurrent terms of imprisonment for the remaining offenses. *Id.*

Mr. Johnson appealed his conviction, challenging the sufficiency of the evidence and the trial court's decision to allow statements by Curtis Johnson to be read into the record. The Pennsylvania Superior Court affirmed the sentence, *Commonwealth v. Johnson*, No. 3080 EDA 2013, 2014 WL 10795279, at *5 (Pa. Super. Ct. Oct. 8, 2014), and the Pennsylvania Supreme Court denied Mr. Johnson's petition for allowance of appeal, Dkt. No. CP-51-CR-0010412-2008, at 14.

Mr. Johnson filed a timely Post-Conviction Relief Act (PCRA) petition challenging the constitutionality of the trial court's reasonable doubt instruction. R. & R., at 4; Dkt. No. CP-51-CR-0010412-2008, at 14–15. The PCRA court dismissed the petition, and the Superior Court affirmed the dismissal, finding that (1) Mr. Johnson's jury instruction claim was waived because he could have raised it on direct appeal but did not, and (2) Mr. Johnson's claim that his trial counsel was ineffective for not objecting to the instruction was waived because he did not raise this claim in his PCRA petition. *Commonwealth v. Johnson*, No. 358 EDA 2018, 2019 WL 1338679, at *3 (Pa. Super. Ct. Mar. 25, 2019). The Pennsylvania Supreme Court denied allowance of appeal. Dkt. No. CP-51-CR-0010412-2008, at 18.

Mr. Johnson then timely filed the present habeas petition, raising only a single claim for relief: that his trial counsel was ineffective for failing to object to the reasonable doubt instruction. The Court referred the petition to a magistrate judge for a Report and Recommendation, which recommended that the Court deny Mr. Johnson's petition. Mr. Johnson timely objected to the magistrate judge's Report and Recommendation, and the Commonwealth responded to the objection,

## LEGAL STANDARD

### I.    Exhaustion and Procedural Default

Before a person in state or federal custody may file a habeas petition in federal court, they must first "exhaust[] the remedies available in the courts of the State" unless no such remedies are available or "circumstances exist that render such process ineffective . . . ." 28 U.S.C. § 2254(b)(1). Exhaustion requires that a habeas petitioner demonstrate that the claims at issue have been "fairly presented to the state courts," *Castille v. Peoples*, 489 U.S. 346, 351 (1989), meaning they must present the "factual and legal substance" of the claims "to the state courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). This is accomplished "by invoking one complete round of the State's established appellate review process," *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999), which in Pennsylvania includes presenting the federal claim through the Superior Court on direct or collateral review, *Lambert v. Blackwell*, 387 F.3d 210, 233–34 (3d Cir. 2004).

The failure to present a claim to the state courts generally results in a procedural default. *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Procedural default bars federal habeas relief when a state court relies upon, or would rely upon, "a state law ground that is independent of the federal question and adequate to support the judgment." *Nolan v. Wynder*, 363 F. App'x 868, 871 (3d Cir. 2010). Where a claim has been procedurally defaulted in state court, federal habeas review

4

is available only if the petitioner can establish (1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the claims will result in a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

## II.  Merits Review

A federal district court "shall not" grant a petition for habeas corpus "unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"A state court decision is 'contrary to' clearly established federal law if it 'applies a rule that contradicts the governing law set forth' in Supreme Court precedent, or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different' from that reached by the Supreme Court." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013) (alteration in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). And "a state court decision reflects an 'unreasonable application of such law' only 'where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents,' a standard the Supreme Court has advised is 'difficult to meet.'" *Mathias v. Superintendent Frackville SCI*, 876 F.3d 462, 476 (3d Cir. 2017) (alteration in original) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

If a party timely objects to a magistrate judge's report and recommendation, the court *must* "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

DISCUSSION

Mr. Johnson raises one claim for relief: that his trial counsel was ineffective for failing to object to the trial court's reasonable doubt instruction. The Commonwealth argues that this claim is procedurally defaulted because Mr. Johnson failed to properly present it to the state courts. Mr. Johnson protests that this default is excused due to the ineffectiveness of his PCRA counsel under *Martinez v. Ryan*, 566 U.S. 1 (2012). The Court agrees with the Report and Recommendation that Mr. Johnson has demonstrated cause to excuse the default under *Martinez*, but also that his ineffective assistance of counsel claim fails on the merits because he cannot establish actual prejudice.

## I.  Exhaustion and Procedural Default

A habeas petitioner must exhaust their federal constitutional claims in state court before raising them in a federal habeas petition. 28 U.S.C. § 2254(b)(1)(A). In Pennsylvania, this means presenting the federal claim through the Superior Court on direct or collateral review. *Lambert*, 387 F.3d at 233–34. Here, the Superior Court concluded that Mr. Johnson's ineffective assistance of trial counsel claim was waived because he failed to raise it in his PCRA petition and presented it for the first time on appeal. *Johnson*, 2019 WL 1338679, at *3. In Pennsylvania, the failure to raise an issue in a lower court results in waiver of that issue on appeal. Pa. R. App. P. 302(a). This is an independent and adequate state law ground for rejecting Mr. Johnson's claim, resulting in a procedural default. *See, e.g., Crocker v. Klem*, 450 F. App'x 136, 138 (3d Cir. 2011).

Mr. Johnson concedes that his claim is procedurally defaulted, but argues that this default is excused due to his PCRA counsel's alleged ineffectiveness. In general, an attorney's errors in post-conviction proceedings do not excuse a procedural default; the Supreme Court has recognized, however, a "narrow exception" whereby the ineffectiveness of post-conviction counsel may establish cause for procedural default of a prisoner's claim of ineffective assistance

6

at trial. *Martinez*, 566 U.S. at 9. For this exception to apply, it first must be the case that "state law requires a prisoner to raise claims of ineffective assistance of trial counsel in a collateral proceeding, rather than on direct review." *Preston v. Superintendent Graterford SCI*, 902 F.3d 365, 376 (3d Cir. 2018). This is the case in Pennsylvania. *See Cox v. Horn*, 757 F.3d 113, 124 n.8 (3d Cir. 2014) (citing *Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002)). Under *Martinez*, procedural default of an ineffective assistance of trial counsel claim is excused where (1) "the default was caused by ineffective assistance of post-conviction counsel or the absence of counsel"; (2) the default occurred in the "first collateral proceeding in which the claim could be heard"; and (3) "the underlying claim of trial counsel ineffectiveness is substantial." *Cox*, 757 F.3d at 119 (internal quotation marks omitted)..

All three prongs are satisfied here. First, although Mr. Johnson's PCRA counsel challenged the constitutionality of the trial court's reasonable doubt instruction, they failed to raise a claim of trial counsel ineffectiveness. The omission of this "significant and obvious issue" by Mr. Johnson's PCRA counsel constitutes deficient performance. *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 942 (3d Cir. 2019). Second, Mr. Johnson's PCRA counsel failed to raise the ineffectiveness claim before the PCRA Court, which was the "first collateral proceeding in which the claim could be heard[.]" *Cox*, 757 F.3d at 119. Finally, Mr. Johnson's underlying claim is substantial because "reasonable jurists could debate" that Mr. Johnson's claim has merit, *Preston*, 902 F.3d at 377. Indeed, reasonable jurists in this district *have* debated the constitutionality of the precise jury instruction at issue here.[1] Therefore, the Court finds that Mr.

---

[1] For courts holding this instruction unconstitutional, with several finding the instruction unconstitutional, *see, e.g., Moore v. Rivello*, No. 20-cv-838, 2022 WL 1749250, at *6–11 (E.D. Pa. May 31, 2022); *Brooks v. Gilmore*, No. 15-cv-5659, 2017 WL 3475475, at *3–5 (E.D. Pa. Aug. 11, 2017); *Corbin v. Tice*, No. 16-cv-4527, 2021 WL 2550653, at *7 (E.D. Pa. June 22, 2021); *Jackson v. Capozza*, No. 17-cv-5126, 2019 WL 12288169, at *8–10 (E.D. Pa. Feb. 28, 2019), *report and recommendation adopted by* 2021 WL 1962887 (E.D. Pa. May 17, 2021); *Edmunds v. Tice*, No. 19-cv-1656, 2020 WL

Johnson's default is excused under *Martinez* and will proceed to the merits of his ineffective assistance of trial counsel claim.

## II.    Ineffective Assistance of Trial Counsel

To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must establish both that their counsel's performance was deficient and that their counsel's deficient performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Before applying this standard, however, the Court first considers the constitutionality of the trial court's reasonable doubt instruction.

### A.  The Trial Court's Reasonable Doubt Instruction

An improper jury instruction may deprive a defendant of their due process rights under the Fourteenth Amendment. *Bennett v. Superintendent Graterford SCI*, 886 F.3d 268, 284–85 (3d Cir. 2018). A proper reasonable doubt instruction in particular is so important that the failure to provide one "is a structural error that so infects the trial process that the verdict cannot be said to reflect a proper verdict in a criminal case." *Baxter v. Superintendent Coal Township SCI*, 998 F.3d 542, 548 (3d Cir. 2021). Any reasonable doubt instruction must also be accurate and clear; this is assessed by "ascertain[ing] how a reasonable jury would have interpreted the instructions at issue." *Tyson v. Superintendent Houtzdale SCI*, 976 F.3d 382, 392 (3d Cir. 2020). Any instruction must

---

6810409, at *8–9 (E.D. Pa. Aug. 31, 2020), *report and recommendation adopted by* 2020 WL 6799259 (E.D. Pa. Nov. 19, 2020); *McDowell v. DelBalso*, No. 18-cv-1466, 2019 WL 7484699, at *3–4 (E.D. Pa. Jan. 23, 2019), *report and recommendation adopted by* 2020 WL 61162 (E.D. Pa. Jan. 3, 2020); *Brown v. Kauffman,* 425 F. Supp. 3d 395, 408–10 (E.D. Pa. 2019). For courts holding this instruction constitutional, *see, e.g., Bey v. Kauffman*, No. 19-cv-2127, 2020 WL 5775932, at *17 (E.D. Pa. July 15, 2020), *report and recommendation adopted by* 2020 WL 5763550 (E.D. Pa. Sept. 28, 2020); *Gant v. Giroux*, No. 15-cv-4468, 2017 WL 2825927, at *14–15 (E.D. Pa. Feb. 27, 2017), *report and recommendation adopted by* 2017 WL 2797911 (E.D. Pa. June 28, 2017), *vacated and remanded in light of Commonwealth's concession*, Order, No. 17-2559, 2018 WL 11441738 (3d Cir. Sept. 4, 2018); *Baxter v. McGinley*, No. 18-cv-0046, 2019 WL 7606222, at *5–6 (E.D. Pa. Dec. 5, 2019), *report and recommendation adopted by* 2020 WL 299517 (E.D. Pa. Jan. 17, 2020), *aff'd on other grounds*, 998 F.3d 542, 544 (3d Cir. 2021); *Johnson v. Varner*, No. 01-2409, slip op., at 7–8, Doc. No. 24 (E.D. Pa. Sept. 4, 2003).

be examined "in its totality," *Baxter*, 998 F.3d at 548, and the Court may not assess particular paragraphs, sentences, or words in isolation, *United States v. Thayer*, 201 F.3d 214, 221 (3d Cir. 1999), *abrogated on other grounds by Skilling v. United States*, 561 U.S. 358 (2010). For this reason, an instruction may be inaccurate even if it states the correct legal standard if it also includes some defect. *Bey v. Superindendent Greene SCI*, 856 F.3d 230, 241 (3d Cir. 2017).

The Court reviews a reasonable doubt instruction to determine if the instruction, or any defective language therein, creates "'a reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington v. Sarausad*, 555 U.S. 179, 191 (2009). One way to lessen the State's burden is to equate "reasonable doubt" with a higher degree of doubt, such as "grave uncertainty" or "substantial doubt." *Cage v. Louisiana*, 498 U.S. 39, 41 (1990). Another way is to phrase a reasonable doubt instruction in terms of the type of doubt that causes a person to act, rather than the type of doubt that causes a person to *hesitate* to act, as this inversion may risk confusing a jury. *See Holland v. United States*, 348 U.S. 121, 140 (1954).

In *Moore v. Rivello*, this Court held unconstitutional a reasonable doubt instruction very similar to the one at issue here. That instruction asked jurors to imagine that a loved one "was told by their physician that they had a life-threatening condition, condition was terminal, and that the only protocol that existed for treatment of that condition was an experimental surgery" and went on to state that, after exhausting second and third opinions, "[i]f you choose to go forward with this procedure for your loved one, it may not necessarily be because you have eliminated all doubt. It will be because you have eliminated all reasonable doubt. If you have reasonable doubt, you won't have the procedure; but if all reasonable doubt is gone, you will go forward." *Rivello*, 2022 WL 1749250, at *8. This instruction was inaccurate for two reasons. First, it defined reasonable

doubt not in terms of the type of doubt that would cause a person to hesitate, but rather the type of doubt that would enable a person to act—*i.e.*, to "go forward" with the procedure. *Id.* at *10; *see also Holland*, 348 U.S. at 140. Second, the instruction equated reasonable doubt with the degree of doubt that would be required to forego a needed medical operation for a loved one, which is far more akin to a grave or substantial doubt. *Rivello*, 2022 WL 1749250, at *10 (citing *Brooks*, 2017 WL 3475475, at *4). Together, these deficiencies created a reasonable likelihood that the jury might apply an incorrect standard. *Id.*

This Court's prior reasoning in *Rivello* applies to the present instruction, which is deficient for all the same reasons. In fact, to the extent the two instructions differ meaningfully at all, the present instruction presents even more egregious concerns. In *Rivello*, the instruction described a hypothetical "experimental" surgery. *Id.* at *8. As other courts in this district have observed, describing the surgery as "experimental" conveys at a minimum that there may be some risk created by taking action, thus placing at least some focus on whether or not a juror's doubt warrants hesitation. *See Vando v. Clark*, No. 21-cv-724, 2023 WL 329422, at *6, *17 (E.D. Pa. Jan. 20, 2023); *Shields v. Smith*, No. 18-cv-750, 2020 WL 6929097, at *14, (E.D. Pa. Oct. 5, 2020), *report and recommendation adopted*, 2020 WL 6888466 (E.D. Pa. Nov. 24, 2020). In the instruction presently at issue, however, the "experimental" surgery has been replaced by an ordinary surgery, one that is described as "the only appropriate protocol for that condition." R. & R., at 2–3 (quoting N.T. 3/15/2010 at 51–54). Given that the instruction describes the medical condition as life-threatening, the lack of any other options suggests that the only risk present in the hypothetical would arise from *inaction*. At best, this lowers the State's burden even farther by suggesting that a reasonable doubt must be one that is not only sufficient to forego an unproven experimental surgery, but also to forego the "only appropriate" treatment to save a loved one's life. At worst,

the instruction "serve[s] as a directive to convict in even the weakest of cases." *Shields*, 2020 WL 6929097, at *14.

The Court anticipates that this sort of close reading of the trial court's instruction may be mistaken as missing the forest for the proverbial trees. To be sure, those courts in this district which have upheld similar reasonable doubt instructions have invoked the principle that a single sentence or paragraph of an instruction should not be judged in isolation but must instead be evaluated in the context of the instructions as a whole. *See, e.g., Bey*, 2020 WL 5775932, at *17 (citing *Cupp v. Naughten*, 414 U.S. 141, 146–47 (1973)); *Gant*, 2017 WL 2825927, at *14; *Baxter*, 2019 WL 7606222, at *6. Though none of these courts endorsed the medical analogy at issue here, each was satisfied that the overall instruction was constitutional because it also included an accurate statement of the reasonable doubt standard.

But just as it would be improper to hold an entire instruction unconstitutional based on a small excerpt, it is also improper to hold an entire instruction constitutional, despite defective language, simply because the instruction gets the law right elsewhere. The touchstone of the Court's analysis is whether there is "'a reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington*, 555 U.S. at 191. And where an instruction includes both a correct and an incorrect statement of the reasonable doubt standard, it is "nearly impossible for a reviewing court to determine which of the two versions of reasonable doubt the jurors applied." *Rivello*, 2022 WL 1749250, at *10 (citing *Francis v. Franklin*, 471 U.S. 307, 322 (1985)). This is especially so where, as here, the incorrect statement of the law consists of an "emotionally charged analogy" that stands out from "cold, distant, and clinical legalese" to leave a lasting impression on a jury. *Corbin*, 2021 WL 2550653, at *7. The abstract concept of reasonable doubt is already

difficult to explain to a jury. *See Holland*, 348 U.S. at 140 (quoting *Miles v. United States*, 103 U.S. 304, 312 (1880)). Providing the jury with an emotional hypothetical invites the risk that the jury will "latch on to the hypothetical . . . rather than grappl[e] with the vague and abstract concept itself, as they must." *Rivello*, 2022 WL 1749250, at *10.

For all the foregoing reasons, the Court holds that the trial court's reasonable doubt instruction was unconstitutional. This does not end the inquiry, however: the Court must still assess whether Mr. Johnson's trial counsel rendered constitutionally ineffective assistance by failing to object to the instruction.

## B. Deficient Performance and Prejudice

To succeed on an ineffective assistance of counsel claim, a habeas petitioner must demonstrate both that their counsel's performance was deficient and that they were prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697.

Where an ineffective assistance of counsel claim is based on trial counsel's failure to object to a faulty reasonable doubt instruction, a habeas petitioner still must demonstrate that they have suffered "actual prejudice." *Baxter*, 998 F.3d at 548. That is, prejudice may no longer be presumed from the fact that a reasonable doubt instruction is unconstitutional.[2] *Rivello*, 2022 WL 1749250, at *16. The Court must assess the facts of the case to determine whether "but for counsel's error, there was a reasonable probability that the outcome of the proceeding would have been different." *Albrecht v. Horn*, 485 F.3d 103, 128 (3d Cir. 2007) (citing *Strickland*, 466 U.S. at 694). "That

---

[2] In his objections to the Report and Recommendation, Mr. Johnson argues that the Third Circuit's decision in *Baxter* was in error and that prejudice should be presumed from an unconstitutional reasonable doubt instruction. Mr. Johnson concedes, however, that the Court is bound by *Baxter* and maintains the issue for a possible future appeal.

requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). Put another way, it must be reasonably likely that "at least one juror would have harbored a reasonable doubt." *Buck v. Davis*, 580 U.S. 100, 120 (2017).

The Court agrees with the Report and Recommendation that there was not a reasonable likelihood of a different result in this case due to the substantial evidence of guilt. Mr. Johnson was implicated by three separate eyewitnesses, all of whom had known him for years: his cousin, Curtis Johnson; Isaac Walker, Curtis Johnson's friend; and Tianna Thomas, Mr. Johnson's ex-girlfriend. Two of these witnesses, Curtis Johnson and Ms. Thomas, witnessed the shooting and gave statements to the police. Ms. Thomas also identified Mr. Johnson from a photo array. Mr. Whitaker also testified that Mr. Johnson had admitted to shooting the victim. That these witnesses knew Mr. Johnson and had no trouble identifying him as the shooter is compelling evidence. *Compare Baxter*, 998 F.3d at 549 (finding no prejudice where eyewitnesses who knew the petitioner for years identified him as the shooter) *with Brooks*, 2017 WL 3475475, at *8 (finding prejudice where there was only one eyewitness who had difficulty identifying the petitioner).

Mr. Johnson identifies a number of potential issues with these witnesses. Curtis Johnson's testimony was introduced through transcripts from the preliminary hearing, rather than live testimony. Ms. Thomas had been convicted of prior *crimen falsi* and admitted to using drugs and alcohol prior to witnessing the shooting. And Mr. Whitaker also admitted to using drugs and alcohol prior to the shooting. But there was sufficient evidence for the jury to nonetheless credit these witnesses' testimony. Mr. Whitaker testified that he was able to remember the details of the incident clearly, and the detective who interviewed Ms. Thomas testified that she did not appear intoxicated at the time.

Mr. Johnson also notes that all three witnesses recanted their testimony to some extent. Mr. Whitaker, though initially testifying that he had spoken with Mr. Johnson immediately after the killing, later testified that he remembered the conversation happening a day or two after the shooting. N.T. 3/8/10 at 75-76. Ms. Thomas, upon taking the stand, testified briefly that she did not see anything happen on the night in question, but later testified that her statement to police identifying Mr. Johnson as the shooter was true and correct. N.T. 3/10/10 at 31-32; 51-54. And during his testimony at the preliminary hearing, Curtis Johnson recanted his testimony, leading the prosecution to confront him with the statement he gave to police on the day of the shooting. N.T. 3/10/10 at 136. In response, Curtis Johnson claimed that the police had forced him to sign the statement. *Id.* at 136-37, 139-49.

Overall, the evidence of Mr. Johnson's guilt, though not ironclad, is certainly substantial. And even with the deficiencies that Mr. Johnson identifies, the evidence remains stronger than in other cases in which courts in this district have found actual prejudice. *See, e.g., Rivello*, 2022 WL 1749250, at *17–18 (finding actual prejudice where there were no eyewitnesses to the shooting, 14 months had passed between the shooting and witnesses speaking to police, and witnesses had recanted their testimony much more thoroughly). Mr. Johnson has not demonstrated that there is a substantial likelihood that the outcome would have been different but for his counsel's error. This failure to show actual prejudice is fatal to his ineffective assistance claim, and the Court denies his habeas petition.[3]

---

[3] Because the Court concludes that "reasonable jurists" would not debate whether Mr. Johnson has established actual prejudice, it will not issue a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); 28 U.S.C. § 2253(c)(2).

### CONCLUSION

The reasonable doubt standard is the highest standard of proof known to the law.  When properly instructed, a jury applying this standard serves as a bulwark against factual error and the conviction of innocents.   Here, the trial court's instruction mis-stated the proper standard, confusing this bedrock principle of criminal law and running the risk that Mr. Johnson might be convicted under a lesser standard in violation of the Due Process Clause.  That this risk did not materialize in this case due to the strength of the evidence against Mr. Johnson does not negate the seriousness of the trial court's defect, nor the continuing threat posed by similar unconstitutional instructions.   Nonetheless, for the foregoing reasons, based on the magnitude of the evidence of Mr. Johnson's guilt that the jury had before it, the Court denies Mr. Johnson's habeas petition.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE
